Kyle F. Reeder
Cannon Law Group
124 S 600 E
Salt Lake City, UT 84102
Telephone: 801-363-2999
kyle@cannonlawgroup.com

Benjamin Barr*
Barr & Klein PLLC
444 N. Michigan Ave., Ste. 1200
Chicago, IL 60611
Telephone: (202) 595-4671
ben@barrklein.com

Stephen R. Klein*
Barr & Klein PLLC
1629 K St. NW, Ste. 300
Washington, DC 20006
Telephone: (202) 804-6676
steve@barrklein.com

*Pro hac vice application forthcoming*

*Attorneys for Plaintiffs Are You Listening Yet PAC and Tracie Halvorsen*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| ARE YOU LISTENING YET PAC, and TRACIE HALVORSEN, <br><br> Plaintiffs, <br><br> v. <br><br> DEIDRE HENDERSON, Lieutenant Governor of the State of Utah, in her official capacity, <br><br> Defendants. | **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> Case No. 2:24-cv-00104 |

## INTRODUCTION

1.      The Utah Constitution provides for the right to initiative, placing direct legislative power in the hands of the people. UTAH CONST. art. VI, § 1. Various ways in which citizens exercise this right—including signature gathering and signing a petition to qualify an initiative for the ballot—are exercises of the freedom of speech, the right to petition the government, and peaceable assembly, which are protected by the First Amendment to the United States Constitution. U.S. CONST. amend. I;[1] *see generally Meyer v. Grant*, 486 U.S. 414 (1988). In recent years, the Utah Election Code has been amended to make exercising the right to initiative more and more onerous, abridging the First Amendment rights of initiative sponsors, signature gatherers and Utahns who sign petitions. Various provisions also violate the state right to initiative.

2.      Having borne the brunt of these violations along with other civically engaged Utahns, Plaintiffs Are You Listening Yet PAC and Tracie Halvorsen respectfully petition this Court to rule that various initiative regulations in the Utah Election Code are unconstitutional and grant declaratory and injunctive relief.

## PARTIES

3.      Plaintiff Are You Listening Yet PAC ("AYLY PAC") is a political action committee formed under the Utah Election Code. It is headquartered in Riverton, Utah. It raises contributions and expends money in support of the Restoring the Utah State Flag statewide initiative, including by financing the printing of petition packets. AYLY PAC intends to engage in fundraising, spending and advocacy in favor of future statewide initiatives.

---

[1] The First Amendment to the United States Constitution applies to state laws via the Fourteenth Amendment. U.S. CONST. amend. XIV; *Meyer*, 486 U.S. at 420. For purposes of brevity, this maxim is incorporated throughout this complaint without further citation.

4.      Plaintiff Tracie Halvorsen resident of Riverton, Utah. She is a registered Utah voter, the author of the Restoring the Utah State Flag statewide initiative and the main sponsor of the initiative. She is the Primary Officer of the AYLY PAC. She has gathered and submitted signature petition packets for the initiative to be presented to the voters for the 2024 General Election. She intends to engage in these activities for other, future statewide initiatives.

5.      Defendant Deidre Henderson is the Lieutenant Governor of the State of Utah. She is sued in her official capacity as chief election officer of the State of Utah who is entrusted to enforce the provisions at issue. *See* Utah Code § 20A-1-105(1). She is obligated to "enforce compliance by election officers with all legal requirements relating to elections, including . . . all . . . applicable provisions of federal law and rule relating to elections[.]" Utah Code § 20A-1-105(1)(c)(iii).

## JURISDICTION AND VENUE

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under the First Amendment to the United States Constitution. This Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, and the Civil Rights Act, 42 U.S.C. § 1983.

7.      This Court has supplemental jurisdiction over claims under the Utah Constitution pursuant to 28 U.S.C. § 1367(a) because all of these claims are so related to the claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

8.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in the District of Utah and all of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL AND LEGAL BACKGROUND

### *The Efforts of AYLY PAC and Ms. Halvorsen to Meet the Statewide Initiative Requirements for Restoring the Utah State Flag*

9.      The Utah state flag was changed by the Utah Legislature in 2023. *See generally Utah's New Flag*, UTAH DEP'T OF CULTURAL & COMMUNITY ENGAGEMENT, https://flag.utah.gov [https://perma.cc/YJ7A-3XC6] (last visited Feb. 8, 2024). In response, supporters of the prior version of the state flag, which featured the traditional Seal of Utah, engaged in an effort to change the flag back through a statewide initiative. They call it the Restoring the Utah State Flag statewide initiative. *See generally Statewide Initiative*, RESTORE UTAH'S FLAG, https://www.restoreutahsflag.com/about-the-initiative/statewide-initiative [https://perma.cc/XD6V-JLLE] (last visited Feb. 8, 2024).

10.      Plaintiffs share a deep concern that efforts to replace the state flag are really efforts to erase history and eliminate symbols of shared values in civil society. Because of this, Plaintiffs wish to associate with others, convince the public of their view, and restore the Utah flag back to its earlier form.

11.      Ms. Halvorsen filed the initiative petition on May 2, 2023. To qualify the Restoring the Utah State Flag initiative, Ms. Halvorsen, AYLY PAC and dozens of volunteers successfully complied with every administrative step necessary to begin the actual process of signature gathering. This included sponsoring and helping to execute seven public hearings across the state on June 5 and 6, 2023. Utah Code § 20A-7-204.1.

12.      Petition packets for the initiative were approved by Lieutenant Governor Henderson's office on June 12, 2024. *See* **Exhibit A** (petition packet with one signature sheet). To qualify for the 2024 general election ballot, proponents of Restoring the Utah State Flag must obtain and submit "legal signatures equal to 8% of the number of active voters in the state on

January 1 immediately following the last regular general election[,] and . . . from at least 26 Utah State Senate districts, legal signatures equal to 8% of the number of active voters in that district on January 1 immediately following the last regular general election." Utah Code § 20A-7-201(2)(a). For the 2024 ballot, this amounts to 134,298 valid signatures.

13.     The law requires that each signature page of a packet contain only two signature lines. Utah Code § 20A-7-203(3); *see* Exh. A at 6. Sponsors such as AYLY PAC and Ms. Halvorsen are required to pay for the printing of packets. Utah Code § 20A-7-204(4)(a). To date, along with other volunteers they have spent approximately $12,000 in printing costs.

14.     Signatures are verified by individuals gathering signatures such as Ms. Halvorsen. They do so by signing the Verification Page before submitting the petition packet to their county clerk declaring that the names that appear in the initiative packet were signed by individuals who professed to be the individuals whose names appear in it, each signer professed to be registered to vote in Utah, each individual wrote the correct date of signature their signature, and each of the individuals signed in the signature collector's presence. Utah Code § 20A-7-203(4); *see* Exh. A at 7.

15.     Ms. Halvorsen and other volunteers engaged in traditional signature gathering work—such as walking door to door and approaching citizens in parking lots and parks—and convinced tens of thousands of them of the need to restore Utah's flag. However, Utah's climate makes signature gathering very difficult in the winter months and Plaintiffs would like to continue their advocacy and signature gathering into the spring and summer to have a chance to persuade enough Utahns to put the flag initiative to a vote.

16.     Following submission, county clerks only count signatures that meet a minimum of the three matching identifiers that include a combination of name, address, matching signature,

and date of birth or age. Utah Code § 20A-1-1002. They disqualify signatures when they determine that the signature does not appear substantially similar to the signature on the statewide voter registration database even if other identifiers are present. *Id.*

17.     Ms. Halvorsen, AYLY PAC and other proponents of Restoring the Utah State Flag are subject to three distinct submission deadlines under the law: packets must be submitted by the earlier of "30 days after the day on which the first individual signs the initiative packet[,] 316 days after the day on which the application for the initiative petition is filed[,] or the February 15 immediately before the next regular general election immediately after the application is filed[.]" Utah Code § 20A-7-105(5)(a)(i). Following the May 2, 2023 submission of the application for Restoring the Utah State Flag, its proponents would have a final deadline of March 13, 2024 under the 316-day provision, but for the February 15 deadline. Given the length of the approval process for petitions lasted until June 12, even that timeframe would only amount to 275 days in which to gather signatures. Ms. Halvorsen and other proponents are currently subject to the 30-day and February 15, 2024 deadlines.

18.     Ms. Halvorsen and other volunteer circulators have diligently worked to gather signatures. To date, they have submitted approximately 91,622 signatures, but 12,596 have been officially rejected according to the Lieutenant Governor, most of them owing to signers not being registered to vote or having a signature that does not match the one on file. **Exhibit B** (excerpt of packet report dated February 7, 2024). The law only requires disclosure of certified names, and county clerks have refused to make any effort to identify rejected signatures despite repeated requests from Ms. Halvorsen and other supporters of Restoring the Utah State Flag. *See* Utah Code § 20A-7-105(6)(a)(ii)(B).

19.     Ms. Halvorsen has collected signatures and submitted packets in support of Restoring the Utah State Flag, including #308,363; #308,196; and #308,098. One of these packets, #308,098 was rejected entirely under Utah Code § 20A-7-105(5)(a)(i)(A) because its earliest signature was more than 30 days old. The packets of many other signature gatherers have been rejected on this same basis and are not accounted for in any manner in the totals provided by the Lieutenant Governor's office. *See, e.g.*, Exh. B at 3 (packet #308,098 missing from total count). The 30-day deadline is a highly restrictive timeframe, creating undue stress for signature gatherers and deterring meaningful participation.

20.     All of the deadlines, individually and collectively, work to severely limit signature gathering. The latest February 15, 2024 deadline is nearly nine months before the general election on which Restoring the Utah State Flag might appear for a vote. Many months before the urgency of the issue in light of forthcoming election sets in, proponents such as AYLY PAC and Ms. Halvorsen must have all signatures submitted and verified.

***The Prohibited Conduct and the Challenged Provisions of the Utah Election Code***

21.     Ms. Halvorsen has worked diligently with other volunteers to gather tens of thousands of signatures for Restoring the Utah State Flag. She would like to continue these efforts into the spring and summer when the weather is more hospitable and when more people are out in public. But for the February 15 and 316-day deadlines in Utah Code § 20A-7-105(5)(a)(i) and § 20A-7-105(5)(b), Ms. Halvorsen would continue to submit signature packets in support of Restoring the Utah State Flag after these later deadlines while leaving the Lieutenant Governor ample time to certify and prepare the issue for the November ballot.

22.     AYLY PAC and Ms. Halvorsen have raised funds and paid for the printing of packets as is required under the law. Utah Code § 20A-7-204(4)(a). The law limits pages to two

per page, only one fifth the number permitted for, for example, petitions for signatures supporting ballot access for independent candidates. *Cf.* Utah Code § 20A-7-203(3) with § 20A-9-502(1)(b). This expense an unjustified burden that violates the First Amendment by adding unnecessary costs to signature gathering. But for the law, AYLY PAC and Ms. Halvorsen would utilize petition pages permitting up to 10 signatures per page.

23.     Ms. Halvorsen and AYLY PAC would like their efforts to be bolstered by working with professional signature gatherers. However, under Utah law professional signature gatherers may only be paid an hourly rate. Utah Code § 20A-7-104(1), (2), (3). Paying an hourly rate only increases costs and decreases effectiveness. But for these prohibitions, AYLY PAC would engage with professional signature gatherers that charge per valid signature collected or at a fixed price.

24.     Similarly, Ms. Halvorsen and AYLY PAC would engage with professional signature gatherers, most of whom operate nationwide and employ non-Utah residents. Non-residents are also prohibited from signature gathering under Utah law.  Utah Code §§ 20A-7-105(4)(a)(i), 20A-2-105. Ms. Halvorsen has communicated with several such companies whose mangers have noted the difficulty of engaging effectively without non-resident professionals. But for the restriction, AYLY PAC and Ms. Halvorsen would engage with professional signature gatherers who are not residents of Utah.

25.     After receiving and reviewing a petition packet, Utah Code § 20A-7-105(6)(a)(ii)(B) requires county clerks to "post the name, voter identification number, and date of signature of each legal voter certified under . . . on the lieutenant governor's website, in a conspicuous location designated by the lieutenant governor[.]" However, there is no requirement for anyone to post rejected names. This is compounded by Utah Code § 20A-7-105(10), which holds that "[a] person may not retrieve a packet from a county clerk, or make any alterations or

corrections to a packet, after the packet is submitted to the county clerk" and by wholesale rejection of packets under the 30-day deadline. Thus, it is very difficult for signature gatherers such as Ms. Halvorsen to assess who has been rejected, particularly for packets rejected entirely under the 30-day deadline. But for the packet retrieval prohibition, Ms. Halvorsen would retrieve rejected packets and note valid signatures that have been rejected strictly based on the 30-day deadline.

26.      Retrieving a packet is only valuable if Ms. Halvorsen and others can re-engage rejected signers and have them sign again. But Utah Code § 20A-7-213(1)(b) makes it unlawful for "an individual to . . . knowingly sign the individual's name more than once for the same initiative at one election[.]" This includes individuals whose names have been previously rejected, even for signatures that are wholly valid but submitted after the 30-day deadline. But for the criminal sanction for signing a petition twice under, Ms. Halvorsen would engage rejected signers and have them re-sign a petition.

27.      Re-engaging rejected signers is hindered by the disclaimer required on each petition page. *See* Exh. A at 6. No matter what Ms. Halvorsen says, the warning still reads that it is a misdemeanor for someone "to knowingly sign the individual's name more than once for the same measure[.]" *Id.* But for the wording of this warning, Ms. Halvorsen would engage rejected signers and have them re-sign a petition.

28.      Ms. Halvorsen should not have to re-engage at all with signers rejected under the 30-day deadline, but only those who are rejected for an invalid signature. *See* Utah Code § 20A-1-1002. But for the 30-day deadline, Ms. Halvorsen would only re-engage with signers who have been rejected for a legitimate reason such as not having current voter registration.

29.      The combined effect of these prohibitions, regulations and arbitrary deadlines prevent Restoring the Utah State Flag or any initiative from having a meaningful chance of being

certified for the 2024 general election. They also hamper the effective advocacy of Plaintiffs speaking and associating with others to affect this change. But for the 316-day and February 15 deadlines, Ms. Halvorsen and AYLY PAC would continue to gather and support the gathering of signatures for Restoring the Utah State Flag after February 15, 2024 and the 316-day deadline to qualify for the 2024 ballot. Ms. Halvorsen would submit signatures prior to a realistic date that provides the Lieutenant Governor ample time to certify the initiative and comply with all of her other electoral duties.

## CLAIMS FOR RELIEF

### COUNT I

1.       The February 15 deadline under Utah Code § 20A-7-105(5)(a)(i) and § 20A-7-105(5)(b) is unconstitutional under the First Amendment to the United States Constitution and Article VI, section I of the Utah Constitution, respectively.

### COUNT II

2.       The 30-day submission deadline for packets under Utah Code § 20A-7-105(5)(a)(i) and § 20A-7-105(5)(b) is unconstitutional under the First Amendment to the United States Constitution and Article VI, section I of the Utah Constitution, respectively.

### COUNT III

3.       The 316-day submission deadline under Utah Code § 20A-7-105(5)(a)(i) and § 20A-7-105(5)(b) is unconstitutional under the First Amendment to the United States Constitution and Article VI, section I of the Utah Constitution, respectively.

### COUNT IV

4.    The circulator payment restrictions in Utah Code § 20A-7-104(1), (2), (3) are unconstitutional under the First Amendment to the United States Constitution and Article VI, section I of the Utah Constitution, respectively.

### COUNT V

5.    The residency requirement for signature gatherers under Utah Code § 20A-7-105 is unconstitutional under the First Amendment to the United States Constitution and Article VI, section I of the Utah Constitution, respectively.

### COUNT VI

6.    The packet retrieval prohibition under Utah Code § 20A-7-105(10) is unconstitutional under the First Amendment to the United States Constitution and Article VI, section I of the Utah Constitution, respectively, as applied to packets that have been wholly rejected.

### COUNT VII

7.    The format of initiative signature sheets under Utah Code § 20A-7-203(3) is unconstitutional under the First Amendment to the United States Constitution and Article VI, section I of the Utah Constitution, respectively.

### COUNT VIII

8.    The prohibition against knowingly signing an initiative petition more than once under Utah Code § 20A-7-213(1)(b) is unconstitutional under the First Amendment to the United States Constitution and Article VI, section I of the Utah Constitution, respectively, as applied to signers whose previous signature has been rejected.

## COUNT IX

9.     The warning required on signature sheets warning against knowingly signing an initiative petition more than once under Utah Code § 20A-7-203(f)(iv) is unconstitutional under the First Amendment to the United States Constitution and Article VI, section I of the Utah Constitution, respectively, as applied to signers whose previous signature has been rejected.

### REQUEST FOR RELIEF

Wherefore, the Plaintiffs respectfully request that this Court:

1.     Grant declaratory relief, specifying the unconstitutionality of the provisions in Counts I-IX, above.

2.     Grant injunctive relief, ordering that:

   a.  AYLY PAC, Ms. Halvorsen and other supporters of Restoring the Utah State Flag may submit petition packets until 5 p.m. on July 8, 2024. Lieutenant Governor Henderson must order all county clerks to accept these packets and count all valid signatures.

   b.  Lieutenant Governor Henderson must order all county clerks to count signatures for Restore Utah's Flag on packets that are otherwise valid but submitted after the 30-day deadline in Utah Code § 20A-7-105(5)(a)(i)(A).

   c.  Lieutenant Governor Henderson must order all county clerks to count valid signatures on packets previously submitted and rejected owing to the 30-day deadline in Utah Code § Utah Code § 20A-7-105(5)(a)(i)(A).

   d.  Lieutenant Governor Henderson must order all county clerks to count signatures on packets that are otherwise valid but submitted after the 316-day submission deadline under Utah Code § 20A-7-105(5)(a)(i)(B).

e.  AYLY PAC, Ms. Halvorsen and other sponsors of Restoring the Utah State Flag may add "if the individual's previous signature has not been rejected" following "or to knowingly sign the individual's name more than once for the same measure" in the warning at the bottom of each petition page that they print. Lieutenant Governor Henderson must order all county clerks to consider these pages valid to assess signatures.

f.  Lieutenant Governor Henderson must order all county clerks to return packets that are wholly rejected to the person who submits them.

g.  Lieutenant Governor Henderson must approve a signature page for statewide initiatives that can accommodate 10 signatures on or before March 1, 2024.

h.  Lieutenant Governor Henderson must order all county clerks to provide the names of rejected signatures publicly in the same manner as accepted signatures are disclosed under § 20A-7-105(6)(a)(ii)(B) or, at a minimum, provide rejected names to the signature collector who verified the packet.

i.  Lieutenant Governor Henderson is enjoined from enforcing the state's restrictions on paying signature gatherers under Utah Code § 20A-7-104(1), (2), (3).

j.  Lieutenant Governor Henderson is enjoined from enforcing the state's residency requirement for signature gatherers under Utah Code § 20A-7-105(4)(a)(i).

k.  Lieutenant Governor Henderson is enjoined from enforcing the misdemeanor charge in Utah Code § 20A-7-213(1)(b) against signers whose names have previously been rejected as invalid.

3.      Award Plaintiffs reasonable attorneys' fees and costs.

4.      Grant such other and further relief as the Court deems appropriate.

Respectfully submitted this 8th day of February, 2024.

Kyle F. Reeder
Cannon Law Group
124 S 600 E
Salt Lake City, UT 84102
Telephone: 801-363-2999
kyle@cannonlawgroup.com

Benjamin Barr*
Barr & Klein PLLC
444 N. Michigan Ave., Ste. 1200
Chicago, IL 60611
Telephone: (202) 595-4671
ben@barrklein.com

Stephen R. Klein*
Barr & Klein PLLC
1629 K St. NW, Ste. 300
Washington, DC 20006
Telephone: (202) 804-6676
steve@barrklein.com

*Attorneys for Plaintiffs*

## TRACIE HALVORSEN VERIFICATION

I, Tracie Halvorsen, declare as follows:

1. I reside at 12554 S. 4260 W. Riverton Utah 84096.

2. I am the Primary Officer of the Are You Listening Yet PAC ("AYLY PAC").

3. AYLY PAC is registered in Utah and its principal place of business is Riverton, Utah.

4. I have personal knowledge of my own activities, including those set out in this Verified Complaint, and if called upon to testify I would competently testify as to the matters stated herein.

5. I have personal knowledge of AYLY PAC's activities, including those set out in this Verified Complaint, and if called upon to testify I would competently testify as to the matters stated herein.

6. I verify under penalty of perjury under the laws of the United States of America that the factual statements contained in this Verified Complaint concerning my existing and proposed activities are true and correct.

Executed on February _8_, 2024.


Tracie Halvorsen