DAVID N. WOLF (6688)
LANCE F. SORENSON (10684)
JASON DUPREE (17509)
Assistant Utah Attorneys General
Utah Attorney General
160 East 300 South, 6th Floor
PO Box 140856
Salt Lake City, UT 84114-0856
Telephone: (801) 366-0100

*Counsel for Defendant*

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ARE YOU LISTENING YET PAC, and TRACIE HALVORSEN,<br><br>*Plaintiffs*,<br><br>v.<br><br>DEIDRE HENDERSON, in her official capacity as Lieutenant Governor of the State of Utah,<br><br>*Defendant*. | **DECLARATION OF RYAN COWLEY IN SUPPORT OF DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Case No. 2:24-CV-00104<br><br>Judge Jill Parrish |

STATE OF UTAH        )
                                  ) ss.
County of Salt Lake   )

    Ryan Cowley, being first duly sworn states as follows:

1. I am the Director of Elections in the Office of the Utah Lieutenant Governor ("LGO"). I have served in this position since December 2021.  Prior to my job in the LGO, I was Director of Elections in the Weber County Clerk's Office, a position I held from 2015 to 2021. Prior to my job in Weber County, I was the Chief Deputy County Clerk in Summit County, a position I held from 2007 to 2015.

2. I am familiar with the Utah Election Code and am tasked with applying Election Code provisions as one of the duties of my job. As a former employee of two county clerk

1

    offices, I also have personal knowledge of the responsibilities of County Clerks in the administration of elections.

3. In its 2023 general session, the Utah Legislature enacted S.B. 31, State Flag Amendments, codified in Utah Code 63G-1-501 *et seq*.

4. S.B. 31 established a new state flag of Utah and designated the prior flag as the "historic state flag.

5. S.B. 31 states, "All citizens maintain the right to use the historic state flag upon any occasion deemed fitting and appropriate."

6. On March 6, 2023, eight individuals filed an application to sponsor a referendum on S.B. 31.

7. To qualify the Referendum for the ballot, the sponsors needed to gather 134,298 valid signatures statewide (8% of active voters in the state), including signatures from 8% of active voters in 15 out of 29 senate districts. *See* Utah Code § 20A-7-301(1).

8. The deadline to gather and submit signatures for the Referendum was April 12, 2023. *See* Utah Code § 20A-7-105(5)(ii).

9. The Referendum sponsors submitted 51,596 signatures to county clerks. Of those, clerks validated 21,030 signatures and found 2,117 signatures to be invalid in accordance with Utah Code § 20A-1-1002. The remaining 28,449 signatures were submitted at the deadline and therefore not verified in accordance with Utah Code § 20A-7-307(3). The Referendum fell short of the required threshold by more than 82,000 signatures.

10. On May 2, 2023, Plaintiff Tracie Halvorsen and others filed an application with the LGO to sponsor an initiative (the "Initiative") that would: (1) repeal S.B. 31; (2) provide for one Utah flag; (3) provide that all proposed adoptions of a new state flag be submitted to the voters of the state; and (4) provide that modification of the state flag and expenditures made in modifying the state flag be submitted to the voters.

11. Plaintiff Are You Listening Yet PAC is not a sponsor of the Initiative.

12. As of February 15, 2024, the final deadline for submitting signatures set forth in Utah Code § 20A-7-105(5)(a)(i)(C), Initiative sponsors submitted 99,125 signatures. Of the signatures submitted, 81,992 were verified by county clerks and 13,110 were determined to be invalid under Utah Code §20A-1-1002. The remaining 4,023 signatures were submitted at the deadline, and therefore not verified in accordance with Utah Code §

20A-7-307(3). The sponsors fell over 50,000 signatures short of the required signature threshold. As of February 21, 2024, only 2,075 signatures had been rejected because they were part of signature packets submitted beyond the statutory 30-day deadline (Utah Code §20A-7-105(5)(a)(i)(A)).

13. In addition to failing to meet the required 8% signature threshold statewide, the sponsors only met the required 8% signature threshold one senate district. Utah Code requires that sponsors reach this threshold in 26 of the 29 senate districts. *See* Utah Code 20A-7-201(2)(a).

14. County clerks shoulder much of the work in administering elections. They verify signatures for statewide and local initiatives and referenda, as well as for statewide and local candidates for office. They remove signatures when requested. They maintain voter registration records. They prepare voter information pamphlets. They design, prepare, and mail ballots. They receive and count ballots. They report vote totals to the public and to the board of canvass for certification.

15. In addition to their election related responsibilities, county clerks fulfill a number of other responsibilities that may include, but are not limited to the following: issuing marriage licenses, accepting passport applications, taking council and commission meeting minutes, building agendas, publishing public meeting notices, issuing business licenses, performing human resource duties, serving as clerk of the court, etc. Nineteen of the 29 county clerks also serve as county auditors.

16. For a petition signature to be valid, whether for initiative, referendum, or candidate, the signature must be from a registered voter who lives within the appropriate voting district. *See* Utah Code § 20A-7-105(3) & 20A-9-403(3)(a).

17. County clerks verify each signature by checking to see whether the individual is a registered voter and lives within the appropriate voting district, and by comparing each signature with the voter's signature on file (driver's license, voter registration card, etc.). Clerks also match the signer's name, address, and/or age against the information in the state's voter database ("VISTA"). This information may also be used to help find a voter in the registration system. *See* Utah Code § 20A-7-105(3), 20A-9-403(3)(a), & 20A-1-1002.

18. With respect to candidates for office, county clerks must validate signatures within 14 days, and no later than a political party's convention. *See* Utah Code § 20A-9-408(9)(c).

19. With respect to initiatives and referenda, county clerks must validate each signature within 21 days of receiving a signature packet. *See* Utah Code §20A-7-105(6).

3

20. With respect to statewide referenda, applications must be submitted within five days of the close of the legislative session, *See* Utah Code §20A-7-302(1). Signature gathering happens immediately thereafter because signatures must be submitted to the county clerks no later than 40 days after the session ends. *See* Utah Code §20A-7-105(5)(a)(ii)(B).

21. Because the general legislative session typically concludes at the beginning of March, county clerks are likely to be busy validating signatures for a referendum during March and early April.

22. Additionally, in regular election years (even numbered years), political office candidates may begin gathering signatures in January. Candidates may submit signatures to clerks for verification as soon as they gather the required number of signatures, then supplement their initial submissions as many times as they wish prior to the deadline. Candidates typically begin submitting in March in advance of the deadline set forth in Utah Code § 20A-9-403(3). As of February 22, 2024, the county convention dates range from March 23 through April 20, with state conventions scheduled for April 27 prior to the primary election.

23. The Lieutenant Governor is the chief election officer of the state and is responsible to oversee, and generally supervise, all elections and functions relating to elections in the state. The Lieutenant Governor accepts federal and state candidate filings and reviews initiative and referendum applications, prepares signature sheets, and works closely with county clerks throughout elections. The Lieutenant Governor is responsible for verifying the signatures of the following candidates: Federal, Statewide, as well as all multi-county legislative and state school board seats. Her office contracts with Davis County to verify these signatures. County clerks (including Davis) must verify signatures for all single county legislative and state school board seats along with any other county candidates who gather signatures.

24. Thus, county clerks typically become busy validating federal, state, and local candidate petition signatures in March and April prior to the primary election, on top of validating referenda petition signatures. When clerks, particularly in larger counties, become busy validating signatures, they are forced to hire additional, temporary staff to get them verified on time.

25. As with referenda, sponsors seeking to have an initiative submitted to the people must obtain valid signatures from 8% of active voters statewide, which currently amounts to 134,298 signatures. *See* Utah Code § 20A-7-201(2)(a)(i).

26. Additionally, sponsors of a statewide initiative must obtain valid signatures from 8% of active voters from at least 26 of the 29 senate districts. *See* Utah Code § 20A-7-201(2)(a)(ii).

27. There are three pertinent deadlines for statewide initiatives. Sponsors must submit signature packets to the county clerks of the county in which the packet was circulated no later than the earlier of:
    a. 30 days after the day on which the first individual signs an initiative packet;
    b. 316 days after the day on which the application for the initiative petition is filed; or
    c. the February 15th immediately before the next regular election immediately after the application is filed.  See Utah Code § 20A-7-105(5).

28. The requirement for a signature packet to be submitted within 30 days of the first signature applies to each individual signature packet, and does not represent the total time to collect signatures.

29. The rolling submission window created by the 30-day deadline makes verifying signatures a more manageable task for county clerks. It is administratively burdensome for clerks to review many signatures all at once at the end of the gathering period. A rolling deadline also allows sponsors to know how many signatures have been verified and how many are left to obtain before the final deadline.

30. In 2018, prior to the creation of the 30-day rolling deadline, county clerks verified hundreds of thousands of signatures for four successful and one unsuccessful initiative campaigns. The bulk of these signatures were received towards the end of the signature gathering deadline, and then had to be reviewed within a short window of time.

31. In 2018, the Utah Medical Cannabis Statewide Initiative procured 153,894 valid signatures in a period of 6 ½ months.

32. In 2018, the Utah Decides Healthcare Act Statewide Initiative procured 147,280 valid signatures in a period of 2 ½ months.

33.  In 2018, the Direct Primary Election Act (Count My Vote) Initiative procured 131,984 valid signatures in a period of 4 months.

34. In 2018, the Independent Redistricting Commission Statewide Initiative procured 150,082 valid signatures in 2 ½ months.

35. In 2019, the Referendum on Tax Restructuring Revisions gathered 144,674 valid signatures in just five weeks. Fred Cox, who is also the contact sponsor of this Initiative, was a sponsor and the leader of the Referendum on Tax Restructuring Revisions. The bill

was signed on December 18, 2019 and the referendum was deemed sufficient on January 21, 2019. https://www.abc4.com/news/former-state-representative-leads-referendum-against-tax-reform-bill-passed-in-thursday-special-session/ This not only demonstrates that members of the flag Referendum and Initiative groups had knowledge and expertise of someone who had been through the process, but that it is not an undue burden to gather signatures in the dead of winter.

36. The February 15 deadline serves the government's administrative interest by distributing the work county clerks would be required to do in March and April of an election year. With a February 15 deadline for sponsors to submit signatures, and a 21-day deadline for clerks to verify them, the clerks may be free by the second week of March from initiative signatures, thus allowing them to begin processing candidate petition signatures and referendum signatures as necessary.

37. Signature gatherers may not be paid per signature per verified signature, or on the condition that the initiative or referendum qualifies for the ballot. Rather, signature gatherers for ballot initiatives may only be paid on an hourly rate. See Utah Code § 20A-7-104(1).

38. The Initiative sponsors indicated on their application that they would not use paid signature gatherers, and never indicated a desire to change that designation.

39. Prohibiting per signature or per verified signature payments helps reduce fraud. An individual was recently charged with two felonies for paying circulators based upon the number of signatures they collected. This payment method created and incentivized more than two dozen circulators to forge signatures. An ongoing investigation is being conducted by the AG's office and will likely lead to charges in the near future.

40. Prior to the 2024 general session, Utah Code § 20A-7-105(4)(a)(i) required a person circulating signature packets to be a resident of Utah.

41. The Utah Legislature has recently repealed this requirement.

42. Utah Code § 20A-7-105(10) prohibits a person from retrieving a packet submitted to a county clerk or making any alterations of corrections to a packet after the packet is submitted to the county clerk. However, counties post lists of valid signatures on the Lieutenant Governor's website for the sponsors and signers to see whether signatures have been accepted or not.

43. This law serves the government's interest of preventing fraud by, for example, preventing the altering of signature dates and re-submitting the packets.

44. For this very Initiative, the Davis County Attorney is investigating at least two circulators for fraudulently altering signature dates and otherwise altering the pages of petition

    packets. Several other packets had dates blacked out to obscure the fact that the signatures were collected more than 30 days before the packets were submitted to the county clerk for verification.

45. Utah Code § 20A-7-203(3) contains requirements for the formatting of initiative signature sheets.

46. Each of the requirements serve governmental interests such as helping the clerk identify the signer to verify the signature, ensuring that signers are informed, and warning against fraudulent activity.

47. Additionally, the Initiative sponsors approved the format of the signature packets on June 12, 2023, and raised no objections at that time.

48. Utah Code § 20A-7-213(1)(b) prohibits an individual from knowingly signing the individual's name more than once for the same initiative at one election.

49. This requirement serves the straightforward government interest of preventing individuals from signing petitions more than once and ensuring a modicum of support for an initiative.

50. Utah Code § 20A-7-203(3)(f)(iv) requires a warning to be printed on each signature sheet warning individuals that it is a class A misdemeanor for an individual to sign an initiative petition with a name other than the individual's own name, or to knowingly sign the individual's name more than once for the same petition, or to sign an initiative petition when the individual knows that the individual is not a registered voter. This warning serves the governmental interest of warning against and deterring potential fraud.

    I declare under criminal penalty under the law of Utah that everything stated in this document is true.

    DATED THIS 23rd day of February, 2024.

                        */s/ Ryan Cowley*
                        RYAN COWLEY
                        Director of Elections
                        (Copy with original signature maintained by filing attorney)